UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TODD F. FRAZIER,

                    Petitioner,

v.

                                 Case No.  2:07-cv-586-FtM-33DNF

UNITED STATES OF AMERICA,

                    Respondent.

_____/

### ORDER

This matter comes before the Court pursuant to Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. # 1), accompanying Memorandum (Doc. # 2), both filed on September 13, 2007, as well as Petitioner's Omnibus Motion (Doc. # 10), which was filed on February 26, 2008.  The Government filed a response in opposition to Petitioner's Section 2255 motion on January 31, 2008 (Doc. # 9), and filed a response to Petitioner's Omnibus Motion on March 7, 2008 (Doc. # 15).  For the reasons that follow, the Section 2255 Motion and Omnibus Motion are denied.[1]

### I.   Procedural History

Petitioner was charged in a one count indictment on December 15, 2004, with "knowingly and willfully possess[ing] with intent to distribute fifty (50) grams or more of a mixture or substance

---

[1]  Pursuant to Rule 8(a) of the Rules Governing Section 2255 Proceedings, this Court has determined that an evidentiary hearing is not necessary for the adjudication of this motion.  No hearing is required when the record establishes conclusively that a § 2255 motion lacks merit.  United States v. Lagrone, 727 F.2d 1037, 1038 (11th Cir. 1984).

containing a detectable amount of cocaine base, also known as crack cocaine, a Schedule II Controlled Substance." (Cr. Doc. # 1 at 1).[2]

Petitioner filed a number of pretrial motions, most notably a motion to suppress evidence on June 20, 2005 (Cr. Doc. # 30). By his motion, Petitioner sought the suppression of a tan felt bag containing cocaine that was found by law enforcement in the vehicle Petitioner was driving on October 20, 2004, during a traffic stop. Petitioner sought suppression of the cocaine, asserting that the traffic stop in question, which involved the use of K-9 drug detection dogs by law enforcement, was unreasonably long in duration. Petitioner also argued that law enforcement went on an unconstitutional "fishing expedition" by asking Petitioner and his passenger Ms. Jones a series of questions "unrelated to the purpose of the stop." (Cr. Doc. # 30 at 6).

The Government filed a response in opposition to the motion to suppress on June 29, 2005 (Cr. Doc. # 36) providing a description of the factual issues presented in this case as well as detailed arguments touching the validity of the traffic stop, the K-9 free air sniff, the seizure of the contraband, and other issues. This Court held an evidentiary hearing on the suppression motion on June 29, 2005 (Cr. Doc. # 37). The Government presented the testimony of Corporal Ahlquist and Corporal Hedrick, the two

---

[2] References to the criminal docket "Cr." are to case 2-04-cr-120-FtM-33DNF.

police officers who were involved in the seizure of the contraband and the arrest of Petitioner.  The Government also presented the testimony of Deputy Russell Graham, the head K-9 trainer with the Lee County Sheriff's Office.[3]  Petitioner did not present any witnesses.  After hearing the testimony of the witnesses and the arguments of counsel, this Court denied the motion to suppress. (Cr. Doc. # 37).

On August 5, 2005, the Government filed its 21 U.S.C. § 851 notice entitled "Government's Information and Notice of Prior Convictions" (Cr. Doc. # 56).  The Government's § 851 Notice contained the following prior convictions:

> On or about February 26, 1992, the defendant was convicted in the Circuit Court for the Sixth Judicial Circuit, Pinellas County, Florida, of Sale of Cocaine and Possession of Cocaine in violation of the laws and statutes of the State of Florida in case number CRC 89-9365-CF.
> On or about February 26, 1992, the defendant was convicted in the Circuit Court for the Sixth Judicial Circuit, Pinellas County, Florida, of Sale of Cocaine and Possession of Cocaine in violation of the laws and statutes of the State of Florida in case number CRC 91-2497-CF.
> On or about February 26, 1992, the defendant was convicted in the Circuit Court for the Sixth Judicial Circuit, Pinellas County, Florida, of Trafficking in Cocaine and Conspiracy to Traffic in Cocaine in violation of the laws and statutes of the State of Florida in case number CRC 91-09041-CF.

(Cr. Doc. # 56).  The notice clearly described the implications of

---

[3] During the suppression hearing, this Court certified Deputy Graham as an expert in the areas of K-9 training and K-9 certification.

3

the prior convictions: "Said convictions are prior convictions within the meaning of Tile 21, United States Code, Section 851, which mandates an increased sentence under Title 21, United States Code, Section 841(b)." (Cr. Doc. # 56). Specifically, the notice warned Petitioner that he faced "a mandatory term of life imprisonment without release" pursuant to Section 841(b)(1)(A). (Cr. Doc. # 56 at 2).

Petitioner was tried by a jury on August 10-12, 2005. (Cr. Doc. ## 61, 62, 63). On August 12, 2005, the jury returned a unanimous verdict finding Petitioner guilty of the sole count of the indictment. (Cr. Doc. # 69). Specifically, the jury found Petitioner guilty of possession with intent to distribute fifty (50) grams or more of a mixture or substance containing a detectable amount of cocaine base, also known as crack cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(iii)." (Cr. Doc. # 69). Petitioner filed a motion for a new trial on August 18, 2005 (Cr. Doc. # 71), and this Court denied the motion for a new trial on August 30, 2005. (Cr. Doc. # 72).

This Court sentenced Petitioner to life imprisonment, supervised release of 120 months, and a special assessment of $100. (Cr. Doc. # 73). Judgment reflecting Petitioner's sentence was entered on November 16, 2005. (Cr. Doc. # 74). Petitioner filed a direct appeal on November 18, 2005 (Cr. Doc. # 75). On August 25,

4

2006, the Eleventh Circuit affirmed Petitioner's conviction in a lengthy order. (Cr. Doc. # 95).

## II. **Grounds for Section 2255 Motion and Omnibus Motion**

Petitioner filed a timely Section 2255 Motion and asserts that his trial counsel, Attorney Smith, provided ineffective assistance under Strickland v. Washington, 477 U.S. 668 (1984). Specifically, Petitioner asserts that Attorney Smith's performance fell below constitutional standards when Smith failed to subpoena a records custodian, resulting in certain evidence (dispatch logs) not being entered into evidence at the suppression hearing. (Doc. # 2 at 13).

In addition, Petitioner asserts that Attorney Smith's "performance was egregiously ineffective, causing prejudice, for counsel's failure to timely challenge, during the suppression hearing and trial process, Corporal Hedrick's lack of the 'requisite reasonable suspicion' to continue to detain the Defendant, having dogs perform a 'free air search' and, ultimately, searching the defendant's vehicle after completing a traffic stop, thereby violating Defendant's Fourth Amendment Rights." (Doc. # 2 at 22). Petitioner also argues that Attorney Smith rendered constitutionally ineffective assistance by "failing to timely challenge the Government's failure to timely serve the information pursuant to § 851(a)(1) upon counsel/Defendant" and "failing to object to the sentencing court's failure to engage in the § 851(b) colloquy prior to enhancing Defendant's sentence." (Doc. # 2 at

5

27).

Petitioner also filed an Omnibus Motion alleging "the government has perpetrated a fraud upon the court throughout the course of Mr. Frazier's criminal trial which substantially prevented Mr. Frazier from fully presenting his defense as to the constitutionality of the traffic stop and the subsequent seizure of a tan felt bad containing a quantity of cocaine found in the car that Mr. Frazier was driving, but did not own, on the night of October 20, 2004." (Doc. # 10 at 1).

### A.  Omnibus Motion

Petitioner hinges a majority of his arguments on dispatch logs from the date of his arrest.  As noted, Petitioner filed a motion to suppress the felt bag containing cocaine which was seized from the vehicle that he was driving pursuant to a traffic stop on October 20, 2004.  This Court held a suppression hearing, and Petitioner argued that the traffic stop was unconstitutionally long.  The two officers who were involved in Petitioner's arrest and the seizure of the contraband offered testimony during the suppression hearing.

Corporal Hedrick testified that he pulled Petitioner over for speeding on October 20, 2004 at 2:13 a.m. (Cr. Doc. # 88 at 124-126).  Corporal Hedrick requested Petitioner's drivers' license, registration, and proof of insurance. (Cr. Doc. # 88 at 126).  Petitioner tendered his drivers' license with a trembling hand and

6

did not have a registration or proof of insurance for the vehicle, which he indicated he had borrowed from an individual named Stacy. (Cr. Doc. # 88 at 127).   Petitioner was not able to recall Stacy's last name when asked by Corporal Hedrick. (Cr. Doc. # 88 at 128). Corporal Hedrick separated Petitioner and Petitioner's passenger, Ms. Jones, and asked Petitioner to stand in front of the police car. (Cr. Doc. # 88 at 128-130).   Corporal Hedrick testified that, four or five minutes after pulling Petitioner over, he radioed the police dispatcher to check Petitioner's drivers' license. (Cr. Doc. # 88 at 133).   While waiting for the police dispatcher to respond, Corporal Hedrick asked Petitioner what he had been doing, and Petitioner responded that he had gone to Ft. Lauderdale, Florida to check on a vehicle that had broken down and to retrieve a title that had been left in the broken-down vehicle. (Cr. Doc. # 88 at 134-135).   Petitioner stated to Corporal Hedrick that he and Ms. Jones had only been in Ft. Lauderdale for forty-five minutes. (Cr. Doc # 88 at 135).

The police dispatcher then reported to Corporal Hedrick that Petitioner's license was valid, but that Petitioner was on inmate release for trafficking cocaine. (Cr. Doc. # 88 at 135-136). Corporal Hedrick asked Ms. Jones about their trip to Ft. Lauderdale, and she stated that they had been in Ft. Lauderdale for four or five hours. (Cr. Doc. # 88 at 137).

Corporal Hedrick testified that another K-9 handler, Corporal

Ahlquist arrived on the scene some five minutes after Petitioner was pulled over. (Cr. Doc. # 88 at 133). Corporal Ahlquist testified that he arrived on the scene around 2:15 a.m. (Doc. # 55 at 12). Corporal Hedrick asked Corporal Ahlquist to have K-9 unit "Orson" conduct a free air sniff around the vehicle. (Cr. Doc. # 77-78). Petitioner's legs buckled beneath him when he saw the K-9 Orson heading toward the vehicle. (Cr. Doc. # 88 at 149). Orson circled the vehicle twice, which took about one minute, and Orson altered twice by the driver's door by beginning deep breathing, "blading" his body toward the driver's side door and by perking up his ears. (Cr. Doc. # 88 at 79, 106). Orson did not scratch at the door, which would have signaled a full alert. Therefore, Corporal Ahlquist asked Corporal Hedrick to have K-9 unit "Chance" conduct a second free air sniff of the vehicle. (Cr. Doc. # 88 at 80, 139). At this point, Petitioner lowered his head and began to pray. (Cr. Doc. # 55 at 19; Cr. Doc. # 88 at 84). K-9 Chance alerted at the driver's side door of the vehicle. (Cr. Doc. # 55 at 19; Cr. Doc. # 88 at 84, 139). The Officers found over nine ounces of crack cocaine under the steering wheel column. (Cr. Doc. # 55 at 20). Petitioner was then arrested and he and Ms. Jones were placed in a patrol car. (Cr. Doc. # 90 at 181).

Of prime importance to the resolution of the instant dispute, Corporal Hedrick testified that Chance alerted on the vehicle within seven minutes of the beginning of the traffic stop. (Cr.

Doc. # 88 at 159). Corporal Ahlquist, who arrived on the scene after Corporal Hedrick, testified that Chance alerted on the vehicle just two and one-half minutes after Ahlquist arrived on the scene. (Cr. Doc. # 55 at 50).

During the suppression hearing, Petitioner's counsel attempted to introduce into evidence dispatch logs purporting to show the sequence of the events in question and the duration of the traffic stop. The Government objected to the logs being introduced into evidence on the basis of lack of authentication. The Court sustained the Government's objection as to the logs, and thereafter Attorney Smith stated: "I'd like the record to reflect that it was through my incompetence that I failed to subpoena a witness who could authenticate these records." (Cr. Doc. # 54 at 33). In an effort to avoid the very issue that this Court is now obligated to resolve, the Government responded: "If it will assist matters, the Government's objection – I maintain my objection. However, I believe . . . he is attempting to set up an ineffective assistance of counsel claim and have this all sent back down the road. In order to avoid that, I don't have an issue of him going into it for the purposes of establishing what he would show so the Court can perhaps rule it would not matter in any event had it been properly admitted." (Cr. Doc. # 54 at 55).

This Court did not admit the dispatch logs into evidence because Petitioner's counsel failed to subpoena a records custodian

or other person capable of authenticating the dispatch logs, however, the Court allowed Attorney Smith to go over the dispatch logs with the witnesses and this Court fully considered the testimony.  Ultimately, the Court denied the motion to suppress, finding that the Petitioner was not detained for an unconstitutionally long period of time.

Petitioner has filed a copy of the dispatch logs and asserts that the logs prove that he was detained for much longer than the officers stated during the suppression hearing.  Specifically, he claims that "the government has perpetrated a fraud upon the court throughout the course of Mr. Frazier's criminal trial . . . ." (Doc. # 10 at 1).  Petitioner asserts that the dispatch logs show that the stop began at 2:13 a.m. but it was not until 2:44 a.m. that Corporal Ahlquist arrived on the scene "approximately 31 minutes after the 2:13 a.m. original stop time and approximately 25 minutes after Corporal Hedrick initially learned that through dispatch that the NCIC check at 2:19:53 a.m. that Mr. Frazier was recently released from prison for drug trafficking charges." (Doc. # 10 at 7).

This Court has carefully scrutinized the dispatch logs, and to the extent that such logs can be interpreted at all, such logs do not show any fraud perpetrated by the Government.  The logs are not conclusive by any means, and are not signed by anyone or authenticated.  They do not establish that the traffic stop was

unreasonable in duration.   The logs do not require a new trial or any other action by this Court.   Petitioner's omnibus motion is therefore denied.   This Court will now move on to the allegations in Petitioner's Section 2255 Motion.

**B.   Section 2255 Motion**

In his timely 2255 Motion, Petitioner raises various arguments concerning Attorney Smith's allegedly ineffective assistance.

Proving ineffective assistance of counsel is a difficult task. To prevail on an ineffective assistance of counsel claim, Petitioner must meet the test established by Strickland v. Washington, 466 U.S. 668 (1984).   In Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998), the Eleventh Circuit evaluated ineffective assistance of counsel under Strickland:

> The law regarding ineffective assistance of counsel claims is well settled and well documented.   In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court set forth a two-pronged test for analyzing ineffective assistance of counsel claims.   According to Strickland, first, the defendant must show that counsel's performance was deficient.   This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.   Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland, 466 U.S. at 687.

Courts must "indulge [the] strong presumption" that counsel's performance was reasonable and that counsel "made all significant decisions in the exercise of reasonable professional judgment."

Strickland 466 U.S. at 689-90.  Thus, counsel cannot be considered ineffective for performing in a particular way in a case, so long as the approach taken "might be considered sound trial strategy." Darden v. Wainwright, 477 U.S. 168, 186 (1986).  Given the presumption that counsel offered competent assistance, the Petitioner's burden is a heavy one. Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000)(en banc).

The reasonableness of counsel's performance is an objective inquiry.  See Darden, 477 U.S. at 185 (holding that counsel's performance did not fall below an objective standard of reasonableness.)  "Because Counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take." Chandler, 218 F.3d at 1315.  As stated by the court in Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995)(en banc), "The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyers at the trial could have acted, in the circumstances, as defense counsel acted as trial." See also Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998)(explaining that counsel's conduct is unreasonable only if petitioner shows that "no competent counsel would have made such a choice").

12

### 1.   __Failure to Subpoena Records Custodian__

Petitioner asserts that Attorney Smith's failure to subpoena a records custodian at the suppression hearing constitutes ineffective assistance in violation of the Sixth Amendment. Petitioner asserts that, had the dispatch logs been authenticated and admitted into evidence, such logs would have shown that the traffic stop was longer in duration than found during the suppression hearing.

This Court rejects Petitioner's argument. Attorney Smith came to the suppression hearing with the dispatch logs and provided the dispatch logs to Corporal Hedrick and began questioning Hedrick as to the logs. After answering a few questions, the Government objected, and this Court decided not to admit the logs into evidence. Ironically, this Court allowed Attorney Smith to continue his questions to Corporal Hedrick concerning the logs in an effort to avoid later allegations of ineffective assistance of counsel. Attorney Smith was able to use the logs and the logs did not prove that the traffic stop was unreasonably long. Now, as then, the logs are not capable of demonstrating a violation of the Fourth Amendment.

For this reason, Attorney Smith's failure to authenticate the logs through a records custodian or other means does not constitute a violation of the Sixth Amendment for ineffective assistance of counsel.

### 2. Alleged Lack of Reasonable Suspicion

Petitioner's second Section 2255 argument is that Attorney Smith's performance was deficient for failing to challenge Corporal Hedrick's "lack of the requisite reasonable suspicion to continue to detain the defendant, having the dogs perform a free air search and ultimately searching the Defendant's vehicle after completing a traffic stop." (Doc. # 2 at 22).

Petitioner's argument that Attorney Smith failed to challenge Corporal Hedrick's "reasonable suspicion" is completely belied by the record. Attorney Smith filed a motion to suppress the cocaine on June 20, 2005 (Cr. Doc. # 30), and the motion specifically addresses the requirement of reasonable suspicion, the basis for the free air sniff by the K-9 units, and other Fourth Amendment concerns. During the suppression hearing, Attorney Smith persistently focused on these matters. Petitioner's argument that Attorney Smith failed to assert these Fourth Amendment challenges is simply incorrect.

Furthermore, to the extent that Petitioner continues to challenge the validity of this Court's ruling on the motion to suppress, Petitioner's arguments are governed by the Eleventh Circuit's analysis in its Order upholding this Court's ruling due to the application of the law of the case doctrine. See United States v. Jordan, 429 F.3d 1032, 1035 (11th Cir. 2005)("The law of the case doctrine bars relitigation of issues that were decided,

14

either explicitly or by necessary implication, in an earlier appeal of the same case."); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000)("Once a matter has been decided adversely to a defendant on direct appeal, it cannot be relitigated in a collateral attack under section 2255."); Olmstead v. United States, 55 F.3d 316, 319 (7th Cir. 1995)(Section 2255 motion is "neither a recapitulation of nor a substitute" for direct appeal; absent changed circumstances of fact or law, court will not reconsider an issue decided on direct appeal.").

The Eleventh Circuit specifically addressed the Fourth Amendment concerns that Petitioner raises and held:

> The Fourth Amendment protects individuals from unreasonable searches and seizures by government officials, and its protections extend to brief investigatory stops of persons or vehicles. For brief investigatory stops, the Fourth Amendment is satisfied if the police officer has a reasonable suspicion to believe that criminal activity may be afoot. When determining whether reasonable suspicion exists, courts must consider the totality of the circumstances to determine whether the police officer had a particularized and objective basis for suspected legal wrongdoing. A decision to stop a vehicle is reasonable under the Fourth Amendment where an officer has probable cause to believe that a traffic violation occurred.
> Secondly, an officer's investigation of a traffic stop must be reasonably related in scope to the circumstances which justified the interference in the first place. The stop must be of limited duration and may not last any longer than necessary to process the traffic violation unless there is articulable suspicion of other illegal activity. The duration of the traffic stop must be limited to the time necessary to effectuate the purpose of the stop. However, where the initial traffic stop is legal, the officer has the duty to investigate suspicious circumstances that then come to his attention. Additionally, police are entitled under

15

the decisional law to conduct a variety of checks of the driver and his car, including questioning the driver about the traffic violation, requesting consent to search the car, and running a computer check for outstanding warrants. . . .

Here, there is no dispute that the police had probable cause to stop Frazier because he violated traffic laws by speeding. Moreover, the evidence, taken in a light most favorable to the government, supports the district court's denial of Frazier's motion to suppress. Officer Hedrick testified that he stopped Frazier, waited 30 to 40 seconds to ensure safety, then walked to Frazier's driver's side door to request his driver's license, vehicle registration, and proof of insurance. Frazier was only able to provide the license, and when he did so, his hands were shaking, indicating a level of nervousness above what Hedrick ordinarily observed during a routine traffic stop. When Hedrick could not provide registration or proof of insurance, and further could not even recall the last name of the friend who loaned him the vehicle, Hedrick requested that Frazier exit the vehicle for safety reasons and directed him toward the police cruiser. Frazier made hand movement that Hedrick previously had seen in persons who were ready to fight or become violent. At times, Frazier was observed staring at the side of the road, heightening Hedrick's concern that Frazier might run. Hedrick, as he was permitted under decisional law, began to run a check on Frazier's license, but even after Frazier was told that he would be free to go if the licence came back clean, Frazier became more nervous. Hedrick's call to dispatch was made within five minutes of the original stop. While talking to Frazier, Hedrick learned that Frazier had traveled to Ft. Lauderdale and stayed only 45 minutes, a short stay given Hedrick's estimation that the trip should have taken 9 hours round-trip. Jones's version of the story was different. Notably, the computer revealed that Frazier was on inmate release for trafficking cocaine.

Meanwhile, while Hedrick was talking to Frazier, Ahlquist arrived on the scene with his K-9, Orson. Hedrick indicated to him that he wanted Orson to run a sniff, which Ahlquist completed, resulting in an abnormal response to the driver's side door. Ahlquist believed that Orson's response was sufficient to conduct a search, but because a second dog was on the scene, asked Hedrick to run his K-9, Chance. When Orson first approached Frazier's car, Hedrick observed that Frazier's legs seemed like they collapsed underneath him or gave out.

16

When Hedrick began searching Frazier's car based on Chance's positive alert, Ahlquist observed Frazier making a praying motion.  All told, Hedrick testified that approximately seven minutes elapsed from the initial stop to the time Chance gave his alert to the door.
**Based on the foregoing, it cannot be said that the stop was unreasonably prolonged or the search unsupported by probable cause.**

(Cr. Doc. # 95 at 13-17)(internal citations and quotation marks omitted, emphasis added).

Pursuant to the law of the case doctrine, Petitioner's assertions regarding reasonable suspicion and other Fourth Amendment contentions are without merit.

### 3.   <u>Lack of Section 851(a) Notice and 851(b) Colloquy</u>

Petitioner asserts that Attorney Smith was unconstitutionally ineffective because he did not object to the Government's alleged failure to provide timely notice of prior convictions under 21 U.S.C. § 851(a).

Petitioner's argument is flawed.  The Government filed with the Court its Section 851 notice on August 5, 2005 at 11:22 a.m. (Cr. Doc. # 56).  The same notice was simultaneously served on counsel for Petitioner via electronic means: ECF filing.  This notice was provided four days prior to the commencement of the jury trial and provided Petitioner with a reasonable opportunity to weigh his options.  This contention simply lacks merit.

Next, Petitioner asserts that Attorney Smith rendered unconstitutionally defective assistance by not objecting to the

17

Court's failure to engage Petitioner in a Section 851(b) colloquy prior to imposing the sentence of life imprisonment.   Section 851(b) states:

> Affirmation or denial of previous conviction. If the United States attorney files an information under this section, the court shall after conviction but before pronouncement of sentence inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

21 U.S.C. § 851(b).

This Court did not engage Petitioner in a Section 851(b) colloquy during his sentencing hearing.   However, during the sentencing hearing, Attorney Smith was given an opportunity to object to the accuracy of the presentence report, and Attorney Smith stated that he had no objections to the factual accuracy of the presentence report. (Cr. Doc. # 92 at 3). Attorney Smith requested that this Court not apply the provisions of Section 851 to enhance Petitioner's sentence, but during such argument, he essentially admitted that Petitioner committed qualifying prior offenses:

> I'm making this argument for the possibility that the law under Booker, United States will at some point apply to Mr. Frazier, and that it will require that the indictment charging a defendant where he has an enhanceable offense, based on priors, be contained within the indictment and proven to the jury beyond a reasonable doubt. So I would argue that   -- that although that is not the current state of the law, that our interpretation of Booker leads

18

> us to that argument and we object to the application in
> that  -- of the statute enhancement this to a life felony
> **based on his two prior convictions, drug convictions,** and
> ask that the Court not consider the enhancement.

(Cr. Doc. # 92 at 4)(emphasis added).  Attorney Smith's arguments
confirm that Petitioner had in fact been convicted for drug
trafficking on at least two prior occasions and confirms that
Petitioner suffered no prejudice due to the lack of a specific
colloquy under Section 851(b).  Accordingly, Petitioner's Section
2255 motion is denied.

### CERTIFICATE OF APPEALABILITY AND
### LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a
certificate of appealability.  A prisoner seeking a motion to
vacate has no absolute entitlement to appeal a district court's
denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district
court must first issue a certificate of appealability (COA). Id. "A
[COA] may issue . . . only if the applicant has made a substantial
showing of the denial of a constitutional right." Id. at §
2253(c)(2). To make such a showing, the defendant "must demonstrate
that reasonable jurists would find the district court's assessment
of the constitutional claims debatable or wrong," Tennard v.
Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529
U.S. 473, 484 (2000)), or that "the issues presented were 'adequate
to deserve encouragement to proceed further,'"Miller-El v.

19

<u>Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. # 1) is **DENIED.**

(2)  Petitioner's Omnibus Motion (Doc. # 10) is **DENIED**.

(3)  This Court declines to issue a certificate of appealability and Petitioner is not entitled to appeal in forma pauperis.

(4)  The Clerk is directed to file this Order in this case and the corresponding criminal case of 2:04-cr-120-FtM-33DNF.  The Clerk is directed to enter judgment accordingly and to close the case.

**DONE** and **ORDERED** in Fort Myers, Florida, this <u>1st</u> day of September, 2008.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

20

All Counsel of Record
Petitioner